DECISION
{¶ 1} Relator, John M. Hauldren, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied him permanent total disability compensation, and to issue an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that the requested writ of mandamus should be denied because the commission remanded the matter for additional medical examinations and has not yet rendered a final order determining relator's entitlement to permanent total disability compensation. Relator has filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator essentially repeats the same arguments that were considered and rejected by the magistrate. The magistrate found that the commission abused its discretion in relying on the report of Dr. Timothy J. Fallon, as the report did not consider all of the allowed conditions of relator's claim. Relator, himself, objected to this report when he requested the commission to reconsider the staff hearing officer's decision. Because no final decision has been reached by the commission, this matter is prematurely before the court.
 {¶ 4} Relator has also filed objections to the magistrate's order that denied his motion to correct evidence and submit additional evidence. As correctly found by the magistrate, the evidence relator seeks to submit is not relevant to the issues before the court and many of the documents were generated after the date of the commission order at issue.
 {¶ 5} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision and order are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Klatt and Deshler, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : John M. Hauldren, : Relator, : :
v. : No. 03AP-356 : (REGULAR CALENDAR) Ceg. Personnel Services Inc. and : Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 13, 2003. IN MANDAMUS {¶ 6} In this original action, relator, John M. Hauldren, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to enter an order granting him permanent total disability ("PTD") compensation.
 Findings of Fact {¶ 7} 1. Relator has an industrial claim which arose out of and in the course of his employment as a "soil engineer." The claim is allowed for:
Bilateral osteoarthritis of the carpometacarpal joints of the thumbs; traumatic arthropathy — hand, left pyoderma, unspecified, left; traumatic arthropathy — hand bilateral, pyogenic arthritis — forearm, left, pyogenic arthritis — hand left, esophagitis nos, hypertension nos, insomnia nos, disorder of bladder nec, djd — degenerative joint disease bilateral forearm djd — degenerative joint disease bilateral hand, traumatic arthropathy — forearm bilateral, impotence, organic origin.
The industrial claim is assigned claim number 98-626079.
 {¶ 8} 2. On November 8, 2001, relator filed an application for PTD compensation. On December 19, 2001, relator wrote to the commission requesting "that my case be considered statutory PTD."
 {¶ 9} 3. On April 23, 2002, relator was examined on behalf of the commission by physiatrist Timothy J. Fallon, M.D. Dr. Fallon reported:
Today on April 23, 2002 I had the opportunity to talk with, to examine and to review pertinent medical information from the claim file in regards to John M. Houldren. He is 59 yrs. of age and relates 4 yrs. of college with a Bachelor's Degree in education. He is not currently working. He relates that he last worked on 10/14/99 when he was doing soil testing. He indicates he did that on a part-time basis for 5-6 yrs. He also did primarily work as a carpenter and indicates he did not have a specific date of injury but this was an injury that occurred over time and he states was associated with tightening with wing nuts and using his thumbs. He indicates there was not carpenter work available at that time and he was working doing soils inspection.
This gentleman was diagnosed as having bilateral degenerative joint disease of the carpometacarpal joint of the bilateral thumbs. He was a right dominant individual and it was elected to proceed with a fusion on that left side, his nondominant side, first. He underwent a bone graft and fusion and subsequent to that required placement and required a second procedure with the first being done in January, 2000 and the second in April, 2000 which included pinning with K-wires because of nonunion and placement of electrical stimulation contacts. Subsequent to that, he developed a secondary infection and went on to require an ID procedure in July, 2000 and insertion of a left subclavian catheter for antibiotic treatment.
He was originally scheduled to have the surgery as well on the right side but that surgery has not been performed because of the problems associated with trying to do the surgery on the nondominant left side.
He indicates he is not currently being followed by his family physician and is no longer seeing Dr. Lubbers. He last saw Dr. Lubbers in March, 2001 and was told that he had reached MMI at that time.
This gentleman is on multiple medication for multiple medical conditions. From the standpoint of the musculoskeletal system, his medication use consists of Celebrex and Ultram. He indicates he has particular hand pain at night and for that reason he uses Halcion. He has complaints of GI discomfort, hypertension and bladder discomfort and impotence with urinary frequency during the day.
He indicates he is married. His wife is 56 yrs. of age and not working and that she worked for his mother's business which closed down and she went on a retirement plan in that regard.
Overall, this gentleman complains of pain in the hands all the time. He indicates he will have pain if he touches his thumbs. It is worse with any movement and particularly at night. It is better only partially with medications. He is not on any exercises or treatment as it is too painful.
He denies alcohol, tobacco, or street drug use. He indicates he has no hobbies. He indicates he is able to care for himself. He mows the yard using a riding lawn mower and doubles up on his pain medications and uses splints. He does drive and indicates driving here today.
EXAMINATION:
He is 5'10" tall and weighs 195 lbs. He presents with a considerable chronic pain behavior with grimacing, vocalization and indicating that today his pain is at a 5 level and at times it will be up to a 10 level. With any attempts at touching his thumbs, he complains of discomfort. There is some bony deformity noted bilaterally and has pain in the carpometacarpal as well as both phalangeal joints. Other joints of the fingers of the hand are entirely normal.
SUMMARY:
From the standpoint of this gentleman's symptomatology at this time, it is stabilized and is MMI in that no further treatment is being contemplated. His conditions are ones which are stabilized and are MMI. From the standpoint of his impairments, he indicates essentially no movement of the thumb or pressure on the thumb and there are considerable inconsistencies in this gentleman's presentation and examination with considerable chronic pain behavior. Testing for instance of the intrinsic muscles of the hand is giving way and there is no rationale for this in association with his disease process. I did review his x-rays and he does have evidence of carpometacarpal degenerative joint disease. This likely would preclude him from working as a carpenter because of the heavy type of work activity involved. He could however, carry out a wide range of other types of work activities and he does have a college degree in education and so certainly could carry out sedentary and light types of work activities using the hands, particularly from the standpoint of the strength rating and particularly in an office setting.
OPINION:
Giving him the benefit of the doubt in regards to his impairment, in regards to the thumb, this would represent a 75% impairment of the thumb which would translate to a 30% impairment of the hand which would translate to a 27% whole person impairment of the upper extremity which would translate to a 16% whole person impairment. Using the AMA Guides Combined Values Chart for bilaterality, this would represent a 29% whole person impairment. His condition is one which is stabilized and MMI at this time. Please see the Strength Rating.
 {¶ 10} 4. Dr. Fallon also completed a Physical Strength Rating form on April 23, 2002. On the form, Dr. Fallon indicated that relator is capable of "light work."
 {¶ 11} 5. The commission scheduled relator for an examination to be performed by urologist Shrikant K. Vaidya, M.D. On May 10, 2002, Dr. Vaidya wrote:
Mr. John Hauldren was seen in the office today for marked urinary frequency. The patient presented to the office today with a history of urinary frequency and also impotence. The patient had a complete evaluation with physical examination and his residual urine was checked. I have the evaluations in my office, however to complete the further evaluations he needs complete uroflow studies, cystometrogram and cystoscopy. He also needs a serum testosterone test done to evaluate his impotence. [P]enile doppler flow study is needed, and a PSA evaluation is indicated. If the commission authorizes me to perform these tests, I will be able to give you a conclusion of my evaluation.
 {¶ 12} 6. On July 3, 2002, Dr. Vaidya wrote:
Mr. John Hauldren was in the office today and had a Cystometrogram, Cystoscopy, and Penile Doppler Flow Study, which had been pre-authorized by the Industrial Commission.
Acystourethroscopy revealed a severe bladder neck obstruction due to a cicatricial fibrosis. The Systometrogram could not be carried out as the red rubber catheter could not be inserted because obstruction was met in the posterior urethra.
The Penile Doppler Flow Study revealed poor blood flow in the upper penile arteries. Good pudendal blood flow noted. Uroflow study was normal.
I feel that this patient needs a Cysto/Transurethral Resection of the Bladder to free this obstruction. Mr. Hauldren has been tentatively scheduled for July 15, 2002 at Pleasant Valley Hospital. Please issue authorization for the same.
 {¶ 13} 7. On July 3, 2002, Dr. Vaidya completed a Physical Strength Rating form. The form asks the examining physician to indicate whether the claimant is capable of physical work activity. Dr. Vaidya marked the form to indicate that "this claimant is not capable of physical work activity."
 {¶ 14} 8. The commission requested an employability assessment report from Mary L. Kolks, a vocational expert. The Kolks report, dated August 16, 2002, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation.
 {¶ 15} Indicating acceptance of Dr. Fallon's report and responding to the above query, Kolks listed the following employment options: "Soils Engineer[,] Plumbing Inspector[,] Laboratory Tester[,] Building Inspector[,] Bartender." "Industrial Engineer[,] Assistant Drafter."
 {¶ 16} Regarding Dr. Vaidya's report, Kolks wrote:
Dr. Vaidya: The claimant has not Reached MMI status, but is not Able to engage in physical work Activity.
The claimant is not employable at this time given that he is not MMI[.] This will need to be Revisited[.]
 {¶ 17} 9. Following an October 3, 2002 hearing, a Staff Hearing Officer ("SHO") issued an order denying the PTD application as well as the request for so-called statutory PTD. The SHO's order states:
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 11/08/2001 and 12/19/2001, for Permanent and Total Disability Com-pensation, be denied.
The Staff Hearing Officer has carefully reviewed all evidence in file and at today's hearing.
The Staff Hearing Officer notes that the application filed 12/19/2001 is a request that the injured worker be considered to be statutorily permanently and totally disabled pursuant to O.R.C. 4123.58(C). For the reasons that follow, it is found that he is not statutorily permanently and totally disabled.
O.R.C. 4123.58(C) states in pertinent part: "The loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, constitutes total and permanent disability, to be compensated according to this section." "Loss of use," for purposes of this statute provides that the workers' compensation claimant is totally and permanently disabled if he has loss of use of certain appendages, meaning that he has lost the use of the affected parts to the same extent as if amputated. R.C. 4123.58(C) (now(B)). State ex rel. Gould v.Industrial Commission (1988), 40 Ohio St.3d 323.
In the present claim, the injured worker alleges that he has sustained the permanent and total loss of use of both hands. However, there is no persuasive medical or other evidence in the claim file that would support the finding that the injured worker has sustained the * * * permanent and total loss of use of both his hands equivalent to that of amputation. There is also no order in file awarding the injured worker compensation for any scheduled loss of use of any relevant body part. In addition, the injured worker indicated that he uses his hands to sometimes drive, as well as to use the bathroom thirty or more times a day. Further, the extensive documents in the claim file that were handwritten and typed by the injured worker demonstrate on a practical basis that the injured worker has not sustained the permanent and total loss of use of both of his hands equivalent to that of amputation.
Based on the above, the injured worker's application for statutory permanent and total disability filed 12/19/2001 is denied. This finding can be revisited should the injured worker later obtain a finding from the BWC or the Industrial Commission that he has sustained the permanent and total loss of use of his hands consistent with that of amputation. As of this time, the injured worker has not made any application for O.R.C. 4123.57(B) scheduled loss compensation for the permanent and total loss of his hands.
The Staff Hearing Officer further denies the injured worker's application for O.R.C. 4123.58(A) regular permanent and total disability. There are two separate and distinct legal bases for this denial. The first basis is that the allowed conditions do not prevent the injured worker from returning to his former position of employment as a soils engineer inspector. The second separate and distinct basis is that the allowed conditions, in consideration with the injured worker's non-medical disability factors, do not preclude sustained remunerative employment. Each of these separate and distinct bases will be discussed below.
First, the injured worker's application for O.R.C. 4123.58(A) regular permanent and total disability compensation filed 11/08/2001 is denied on the basis that the allowed conditions do not prevent the injured worker from returning to his former position of employment as a soils engineer inspector. In this regard, the Staff Hearing Officer relies upon the persuasive reports dated 04/26/2002, 04/23/2002, and 05/08/2002 that were prepared by Industrial Commission Physical Medicine Medical Specialist Dr. Fallon. The Doctor supports the conclusion that the allowed physical conditions do not prevent the injured worker from engaging in certain types of sustained remunerative employment ranging from a sedentary up to a light physical range.
The Staff Hearing Officer notes the Employability Assessment Report dated 08/16/2002 that was prepared by Industrial Commission Vocational Expert Ms. Kolks. She supports the conclusion that based on the persuasive reports of Dr. Fallon the injured worker retains the residual functional capacities to perform sustained remunerative employment consistent with a number of job titles. Of particular interest is that Vocational Expert Ms. Kolks indicated that the injured worker would not be prevented from performing his former position of employment as a soils engineer inspector.
The Staff Hearing Officer agrees. The residual functional capacities as set forth in the above persuasive medical reports of Dr. Fallon clearly would not physically prevent the injured worker from engaging in sustained remunerative employment consistent with the soils engineer inspector job that he previously performed.
Where the medical evidence on which the Commission is relying supports a conclusion that the Injured Worker can return to the former position of employment there is no need to consider or discuss the non-medical disability factors. State, ex rel.Speelman v. Industrial Commission (1992), 73 O.App.3d 757; State, ex rel. Libbey-Owens Ford Co. v.Industrial Commission (1991), 62 Ohio St.3d 6; State, exrel. Hartung v. Industrial Commission (1990),53 Ohio St.3d 257; State, ex rel. Stephenson v. IndustrialCommission (1987), 31 Ohio St.3d 167. Since it is the finding of the Staff Hearing Officer that the above persuasive medical reports of Dr. Fallon support the conclusion that the allowed conditions do not prevent the Injured Worker from returning to work similar to the soils engineer inspector job previously successfully performed by the Injured Worker, there is no need to consider the Injured Worker's non-medical disability factors.
It is further noted that the reports of Industrial Commission Urological Medical Specialist Dr. Viadya [sic] cannot be used as a basis to support an award of permanent and total disability compensation. First, Dr. Viadya [sic] indicates that the allowed conditions of "impotence, organic origin; and disorder of bladder" have not reached permanency or maximum medical improvement. There is no medical evidence on file that would support the conclusion that those conditions have reached maximum medical improvement. Even more significantly, neither the injured worker nor Dr. Viadya [sic] has demonstrated or explained how the allowed conditions of "impotence, organic origin; and disorder of bladder" would prevent him from performing any of his former positions of employment.
Therefore, pursuant to O.A.C. 4121-3-34(D)(1)(f) the injured worker's application for O.R.C. 4123.58(A) regular permanent and total disability compensation filed 11/08/2001 is denied. That rule requires that if, after hearing, the Staff Hearing Officer finds that the claimant's allowed medical conditions are temporary and have not reached maximum medical improvement, the claimant shall be found not to be permanently and totally disabled. The injured worker indicated at today's hearing that he has not currently filed any request for the payment of temporary and total disability com-pensation. He further indicated that Industrial Commission Urological Medical Specialist Dr. Viadya [sic] has become the physician of record for purposes of treatment of the allowed conditions of "impotence, organic origin; and disorder of bladder."
If and when the injured worker files a request for payment of temporary and total disability compensation based solely on the allowed conditions of "impotence, organic origin; and disorder of bladder", this claim would be referred to the BWC for consideration of and further processing of that request.
It remains clear that the rest of the allowed conditions in this claim remain at maximum medical improvement based on the persuasive reports dated 04/26/2002, 04/23/2002, and 05/08/2002 that were prepared by Industrial Commission Physical Medicine Medical Specialist Dr. Fallon.
Second, the injured worker's application for O.R.C. 4123.58(A) regular permanent and total disability com-pensation filed 11/08/2001 is denied on the second separate and distinct basis that the allowed conditions, in consideration with the injured worker's non-medical disability factors, do not preclude sustained remunerative employment. In this regard, the Staff Hearing Officer relies upon the persuasive reports dated 04/26/2002, 04/23/2002, and 05/08/2002 that were prepared by Industrial Commission Physical Medicine Medical Specialist Dr. Fallon. The Doctor supports the conclusion that the allowed physical conditions do not prevent the injured worker from engaging in certain types of sustained remunerative employment ranging from a sedentary up to a light physical range.
As previously discussed, the Staff Hearing Officer notes the Employability Assessment Report dated 08/16/2002 that was prepared by Industrial Commission Vocational Expert Ms. Kolks. She supports the conclusion that based on the persuasive reports of Dr. Fallon the injured worker retains the residual functional capacities to perform sustained re-munerative employment consistent with a number of job titles.
The job titles that were identified by Vocational Expert Ms. Kolks as being current employment options for the injured worker included: soil testing engineer; plumbing inspector; laboratory tester; building inspector; and bartender.
The Staff Hearing Officer agrees. The residual functional capacities as set forth in the above persuasive medical reports clearly would not physically prevent the injured worker from engaging in sustained remunerative employment consistent with the job titles identified by Vocational Expert Ms. Kolks as being current employment options.
The injured worker indicated at hearing that the injured worker is currently approximately 60 years of age. The Staff Hearing Officer finds that the injured worker's age is overall viewed as a neutral vocational asset. Vocational Expert Ms. Kolks indicates that the injured worker's age would not in and of itself prohibit the injured worker from working.
The Staff Hearing Officer again agrees. The injured worker's age in and of itself clearly would not prevent the injured worker from obtaining and performing sustained remunerative employment consistent with the jobs identified by Vocational Expert Ms. Kolks as being current employment options. This is particularly true when one considers the injured worker's extremely high level of education and his long history of skilled levels of employment. That former employment consists of jobs identical to or very similar to jobs already previously successfully performed by the injured worker.
The injured worker indicated at hearing that the injured worker has completed the college Bachelor's Degree level of education. The Staff Hearing Officer finds that the injured worker's level of education is overall viewed as a strongly positive vocational factor. The injured worker is able to read, to write, and to perform basic math. Vocational Expert Ms. Kolks indicates that the injured worker's level of education would be consistent with the ability to perform semi-skilled and skilled types of work.
The Staff Hearing Officer again agrees. The injured worker's very high educational level, in combination with the ability to read, write, and to perform basic math, would assist the injured worker in obtaining and performing the entry-level, unskilled types of employment identified by Vocational Expert Ms. Kolks as being current employment options.
The injured worker's prior work history was identified as including the following: skilled employment as a soils engineer tester, carpenter, concrete inspector, and chemical laboratory technician; and semi-skilled employment as a maintenance engineer.
Vocational Expert Ms. Kolks notes that the injured worker's prior work history consists of semi-skilled and skilled work activity that indicates that the injured worker is capable of performing entry-level work.
The Staff Hearing Officer again agrees. The injured worker's prior work history is overall viewed as being a strongly positive vocational asset. As previously discussed, the injured worker's former work activity is the same as or very similar to jobs that are listed by Vocational Expert Ms. Kolks as being current employment options for the injured worker.
As previously discussed, the reports of Industrial Commission Urological Medical Specialist Dr. Viadya [sic] cannot be relied upon as a basis to support the payment of permanent and total disability compensation in this claim. In fact, in [sic] can only be used as a basis to support the denial of payment of permanent and total disability compensation in this claim.
The above findings are further significant, because the injured worker admits that no physician in this file specifically opines that the allowed conditions in this claim render the injured worker permanently totally disabled from a medical standpoint. They instead opine either the allowed conditions have not reached maximum medical improvement, or else provide some (but not permanent and total) work restrictions. As previously discussed, the injured worker possesses significantly positive vocational assets.
Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the injured worker is capable of performing sustained remunerative employment consistent with the job titles identified by Vocational Expert Ms. Kolks as being current employment options. Therefore, the injured worker is not permanently and totally disabled.
 {¶ 18} 10. On October 23, 2002, relator moved for reconsideration of his PTD application. In his request for reconsideration, relator contended that Dr. Fallon's report was "fraudulent" and that it contained "false medical evidence made up by Dr. Fallon."
 {¶ 19} 11. On December 7, 2002, the commission itself, with two of its three members approving, issued an "interlocutory order" stating:
The injured worker's request for reconsideration, filed 10/23/2002, from the Staff Hearing Officer order, dated 10/03/2002, issued 10/10/2002, is denied for the reason that the request fails to meet the criteria of Industrial Commission Resolution No. R98-1-3.
The Industrial Commission, sua sponte, orders that pursuant to O.R.C. 4123.52, that the matter is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The question to be heard is whether the Industrial Commission has authority to invoke continuing jurisdiction, pursuant to O.R.C. 4123.52, to rehear the merits of the injured worker's Application for Compensation for Permanent and Total Disability, filed 11/08/2001 and 12/19/2001.
It is the finding of the Industrial Commission that there is evidence of sufficient probative value to warrant adjudication of the issue of whether the Industrial Commission has authority to invoke continuing jurisdiction, pursuant to O.R.C. 4123.52, regarding the alleged presence of clear mistakes of law, such that remedial action would clearly follow.
Specifically, there is evidence that a mistake of law may have occurred when the independent medical examiner for the Industrial Commission, Dr. Viadya [sic], urologist, became the physician of record after he conducted the Industrial Commission exam, which is contrary to Commission Medical Examination Manual, Policy 1-4. In addition there is evidence that a mistake of law may have occurred for the reason that the Staff Hearing Officer did not rely on medical evidence relating to all the allowed conditions to support his finding that the injured worker could return to his previous position of employment.
Based on these findings, the Industrial Commission directs that this matter be set for hearing to determine if the alleged mistakes of law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
After the hearing on the question of continuing jurisdiction, the Industrial Commission will take the issue unde[r] advisement. The Commission will thereafter issue an order on the matter of continuing jurisdiction under O.R.C. 4123.52 and whether the injured worker will be referred for a new examination with a different independent medical examiner on the issue of permanent and total disability.
This order is issued pursuant to State ex rel. Nichollsv. Indus. Comm. (1998) 81 Ohio St.3d 454, State exrel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
This order is interlocutory in nature and not subject to appeal pursuant to Ohio Administrative Code 4121-3-09(C)(9)(b)(iii).
(Emphasis sic.)
 {¶ 20} 12. On February 6, 2003, the three-member commission, with one member absent, held a hearing. Following the hearing, the commission issued an order stating:
02/06/2003 — It is the decision of the Industrial Commission that the injured worker's request for reconsideration, filed 10/23/2002, is granted and that the order of the Staff Hearing Officer, dated 10/03/2002, is vacated.
It is the finding of the Industrial Commission that no mistake occurred when the independent medical examiner for the Industrial Commission, Dr. Viadya [sic], became the injured worker's physician of record after he conducted the Industrial Commission exam.
It is further the finding of the Industrial Commission that the order of the Staff Hearing Officer order, dated 10/03/2002, is based on a mistake of law of such character that remedial action would clearly follow, and that the exercise of continuing jurisdiction under O.R.C. 4123.52 is appropriate in this case.
The Staff Hearing Officer found that "the allowed conditions do not prevent the injured worker from returning to his former position of employment as a soils engineer inspector." The Staff Hearing Officer bases his conclusion on the reports of Dr. Fallon.
The Commission finds that the Staff Hearing Officer cannot rely on the reports of Dr. Fallon to deny permanent total disability because the reports of Dr. Fallon, dated 04/23/2002, 04/26/2002, and 05/08/2002, are fatally flawed because they do not consider all of the allowed conditions. Specifically, Dr. Fallon did not consider the allowed conditions of "impotence, organic origin; and disorder of the bladder." Therefore, the finding of the Staff Hearing Officer that the injured worker is capable of performing his previous position of employment is not based upon all the allowed conditions in the claim.
For the above reasons, the Industrial Commission rejects Dr. Fallon's reports and orders the claim to be referred back to the Industrial Commission Medical Section for new specialist examinations relative to all of the allowed conditions. Specifically, new examinations shall be conducted by an orthopedist/physiatrist and a urologist.
Upon completion of the new examinations, the Commission orders that a new independent vocational report be obtained. Thereafter, this claim is referred to the Columbus Hearing Administrator for processing of the Application for Permanent and Total Disability, filed 11/08/2001 and 12/19/2001.
 {¶ 21} 13. On April 14, 2003, relator filed this mandamus action.
 Conclusions of Law {¶ 22} Finding that this action is, at best, premature, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 23} Following the February 6, 2003 hearing, the commission vacated the SHO's order of October 3, 2002 denying relator's PTD application. In its February 6, 2003 order, the commission asserted its continuing jurisdiction over the PTD applications and ordered that relator be scheduled for new examinations to be performed by an orthopedist/physiatrist and a urologist. In short, the commission has not yet issued a final decision on relator's PTD applications. The commission's February 6, 2003 order is interlocutory even though it is not captioned as such.
 {¶ 24} Mandamus does not ordinarily lie from an interlocutory order of the commission. State ex rel. Kmart Corp. v. Frantom
(1999), 86 Ohio St.3d 430 (inter-locutory discovery order); seeState ex rel. Lantz v. Indus. Comm. (1993), 66 Ohio St.3d 29 (a reconsideration order).
 {¶ 25} Moreover, it is well-settled that failure to pursue an adequate administrative remedy precludes mandamus relief. Stateex rel. Harshaw Chemical Co. v. Zimpher (1985),18 Ohio St.3d 166; State ex rel. Stafford v. Indus. Comm. (1989),47 Ohio St.3d 76; State ex rel. Reeves v. Indus. Comm. (1990),53 Ohio St.3d 212.
 {¶ 26} Here, relator has an adequate administrative remedy. He can submit to the new medical examinations that the commission schedules and then argue anew his PTD applications based upon the evidence before the commission. If relator should prevail before the commission he will have obtained the relief that he seeks through this original action.
 {¶ 27} The magistrate recognizes that there are two cases in which the courts have granted mandamus relief where the proceedings before the commission had not reached finality. However, those cases are inapplicable here and thus do not compel this court to issue a writ of mandamus.
 {¶ 28} One of those cases is State ex rel. Foster v. Indus.Comm. (1999), 85 Ohio St.3d 320. In Foster, the Supreme Court of Ohio, distinguishing Lantz, issued writs of mandamus and prohibition against the commission to prevent the commission from proceeding with the reconsideration of an order granting PTD compensation. In Foster, the commission had issued a reconsideration order asserting that the order granting PTD compensation contained a clear mistake of fact and law. However, the commission's reconsideration order failed to identify the error upon which recon-sideration was being granted. Citing its prior decision in State ex rel. Nicholls v. Indus. Comm.
(1998), 81 Ohio St.3d 454, the Foster court held that the commission had improperly asserted its continuing jurisdiction.
 {¶ 29} Foster is not applicable here because relator does not challenge the commission's interlocutory order of December 7, 2002. It was relator who sought reconsideration of the SHO's order of October 3, 2002, and relator obtained the commission's exercise of continuing jurisdiction that he sought. Accordingly, the commission's December 7, 2002 interlocutory order is not at issue under the Foster line of cases. See, also, State ex rel.Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97.
 {¶ 30} The other mandamus case is State ex rel. Giel v.Indus. Comm. (1993), 88 Ohio App.3d 96. In Giel, this court issued a writ of mandamus ordering the commission to vacate its order for another medical examination and directing the commission to either consider the PTD application based upon the evidence already in the file, or to enter a true order which sets forth in detail the reasons why another medical examination is necessary or even helpful before the commission can determine whether Giel is entitled to PTD compensation.
 {¶ 31} On March 19, 1990, Giel filed a PTD application. On May 18, 1990, an SHO dismissed the application allegedly because the medical evidence submitted did not demonstrate that Giel was PTD. Almost 11 months later, a different SHO vacated the order and entered a new order that the application be processed. As a result, Giel was referred to commission specialist Dr. Kaffen for an examination.
 {¶ 32} Dr. Kaffen opined that Giel was "permanently and totally impaired from engaging in any sustained remunerative employment." Dr. Kaffen also opined that Giel had a 90 percent whole body impairment. In March 1992, a tentative order granting PTD was circulated. One member of the commission voted for the order and two members voted against the order. Two other members of the then five-member commission never indicated their vote on the matter.
 {¶ 33} In May 1992, an attorney with the commission's legal section prepared a statement of facts and recommendation that PTD be awarded. The application was scheduled for hearing before the commission on June 2, 1992.
 {¶ 34} On June 2, 1992, the commission took no formal action. On June 8, 1992, a memorandum from the commission's claims management section to the Cleveland Medical Section stated that the commission was holding the PTD application in abeyance and that the medical section was instructed to arrange for an additional examination.
 {¶ 35} In Giel, this court stated:
The record clearly shows that Giel is unemployed and the medical proof presently in the claim file indicates that he cannot be employed. His application for permanent total disability compensation has been processed for over three years without resolution. An individual would be hard-pressed to aggregate impairments greater than the ninety-percent total impairment suffered by Giel, as found by Dr. Kaffen. Yet, the Industrial Commission, instead of granting the permanent total disability compensation, recommended by its specialist and by its legal staff, has chosen to ask to have Giel examined by a second commission specialist, for reasons not revealed on the record. The circulation of the tentative order granting permanent total disability compensation stopped, for reasons not revealed.
Under the circumstances, it is easy to understand why Giel and his counsel would infer that the Industrial Commission is so reticent to grant permanent total disability compensation that it will go to great lengths to delay or avoid such an award. We also fully understand why Giel and counsel would file an action demanding that the Industrial Commission do its duty. They are within their rights to ask the courts of this state to exercise oversight in such situations.
Perhaps some valid reason for having another medical examination in Giel's case exists. However, the record before us does not reveal the reason and the "order" of the Industrial Commission for the examination is completely silent as to the rationale behind it. The silence, coupled with the highly irregular course of the proceedings demonstrated by the handling of his particular claim, makes it possible or even probable that the claimant will perceive devious or dishonorable motives as the reason for the delays and reexamination.
Id. at 98-99.
 {¶ 36} Subsequent to this court's decision in Giel, the Supreme Court of Ohio decided State ex rel. Clark v. Indus.Comm. (1997), 78 Ohio St.3d 509. In Clark, the court held that the commission abuses its discretion under R.C. 4123.53 where the record fails to disclose that additional medical examinations are necessary or of assistance in determining PTD.
 {¶ 37} The Clark court held that the commission abused its discretion when it decided to schedule a third psychological examination followed by another combined-effects review. The court struck from evidentiary consideration the reports generated from the third psychological examination and the combined-effects review that followed. (The reports of Drs. Shaffer and Holbrook.) The Clark court observed that once the reports of Drs. Shaffer and Holbrook are stricken from evidentiary consideration, the only conclusion that can be reached is to grant relief consistent with State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. Thus, the Clark court issued a writ of mandamus ordering that the commission enter a PTD award.
 {¶ 38} It is important to note that the Clark court was reviewing a final commission order denying PTD compensation. Also, the Clark case is instructive of this court's decision inGiel, because Clark provides the analysis of R.C. 4123.53.
 {¶ 39} Here, the parties do not cite Giel or Clark.
Nevertheless, the magistrate finds that a review of those cases is helpful to an understanding of the parameters of mandamus when it is an interlocutory commission order under challenge.
 {¶ 40} The Giel case is a unique example of this court's exercise of its mandamus power where the commission had ordered additional medical examinations and had not issued a final order as to PTD. This court in Giel ordered the commission to either consider the application based upon the evidence already in the file or to enter a true order which sets forth in detail the reasons why another medical examination is necessary or even helpful. This court, in Giel, did not order Gay relief as did the court in Clark, supra.
 {¶ 41} Given the Giel and Clark decisions, the issue presented here is whether the record fails to disclose that additional medical examinations are necessary or of assistance in determining PTD.
 {¶ 42} The magistrate finds that the record discloses that additional medical examinations are necessary or of assistance in determining PTD.
 {¶ 43} Analysis begins with the observation that it was relator who sought the commission's exercise of continuing jurisdiction. In his motion for reconsideration of the SHO's order denying his PTD application, relator alleged that Dr. Fallon's report was "fraudulent," and that it contained "false medical evidence made up by Dr. Fallon." In response to relator's motion for reconsideration, the commission vacated the SHO's order denying PTD compensation and ordered new medical examinations to be conducted by an orthopedist/physiatrist and a urologist.
 {¶ 44} While there is no indication in the record that the commission agrees with relator's accusations regarding Dr. Fallon's report, relator is clearly in no position here to contend that the commission abused its discretion by ordering another examination by an orthopedist/physiatrist. At the very least, another medical report from an orthopedist/-physiatrist would appear to be of assistance to the commission given relator's allegation regarding Dr. Fallon's report even if another examination may not be required.
 {¶ 45} The record also indicates why the commission would find it appropriate to schedule relator for an examination to be performed by another urologist. As the SHO's order of October 3, 2003 indicates, Dr. Vaidya indicated in his July 3, 2002 report that the bladder condition was not at maximum medical improvement ("MMI") because relator "needs a Cysto/Transurethral Resection of the Bladder to free this obstruction." In that report, Dr. Vaidya requested authorization to perform the surgery.
 {¶ 46} Given the above scenario, there are two reasons why the commission could find it appropriate to schedule relator for a medical examination by another urologist. The first reason is that the bladder condition was not at MMI based upon Dr. Vaidya's report of July 3, 2002.
 {¶ 47} Ohio Adm. Code 4121-3-34(D)(1)(f) states in part:
If, after hearing, the adjudicator finds that the claimant's allowed medical condition(s) is temporary and has not reached maximum medical improvement, the claimant shall be found not to be permanently and totally disabled because the condition remains temporary. * * *
 {¶ 48} Thus, as of the October 3, 2002 hearing, the allowed bladder condition cannot be considered as a factor in the PTD determination because the condition was not at MMI as evidenced by Dr. Vaidya's July 3, 2002 report. However, given that relator had bladder surgery, it is conceivable that the condition might be at MMI by the time a new urologist conducts an examination.
 {¶ 49} The second reason why the commission could find it appropriate to schedule relator for an examination by a different urologist is because Dr. Vaidya became relator's treating physician after he had examined relator as an independent physician for the commission.
 {¶ 50} Chapter one of the commission's Medical Examination Manual (1995) provides the following medical examination policy at page four of the chapter (Policy 1-4):
Examinations are to be performed by physicians and psychologists who hold no bias with respect to the claimant, the employer or the workers' compensation system. Physicians and psychologists are excluded from performing specialist examinations:
1. Who have examined or treated the claimant or reviewed the claim file for the employer, the claimant, or the Bureau of Workers' Compensation, hereafter referred to as the Bureau.
2. Whose professional practice partner/business associate has examined or treated the claimant for the employer, the claimant, or the Bureau.
3. Who have examined the claimant or reviewed the claim file on behalf of the Industrial Commission on the same or a closely related issued.
Any physician who does not meet the impartiality requirements should decline to examine the claimant and return the referral packet or claim file to the Commission with an explanation of the conflict. The claimant will then be rescheduled with an impartial physician or psychologist.
Physicians or psychologists performing examinations for the Commission MAY NOT accept the examined claimant into treatment.
(Emphasis sic.)
 {¶ 51} The commission's policy requires that a PTD applicant be examined by an impartial physician. Dr. Vaidya no longer qualifies for that status because he acted on relator's behalf in seeking authorization for surgery and apparently did perform the surgery.
 {¶ 52} In short, the commission did not abuse its discretion when it ordered that relator undergo another examination by another urologist.
 {¶ 53} Based on the foregoing analysis, the magistrate finds that the Giel case does not compel this court to issue a writ of mandamus under the situation presented here.
 {¶ 54} Clearly, this action is, at best, premature, given that the commission has not as of yet issued a final order determining relator's PTD application. For this reason, the request for a writ of mandamus must be denied.
 {¶ 55} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE