OPINION
{¶ 1} Relator, John M. Groff, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order postponing its adjudication of relator's permanent total disability ("PTD") application until Drs. Paul Bartos and Steven Van Auken can submit *Page 2 
addendums and/or new reports and ordering the commission to process his application for PTD compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision including findings of fact and conclusions of law, which is appended to this opinion, and recommended that this court deny relator's writ of mandamus. Relator has filed objections to the magistrate's decision.
 {¶ 3} We will address relator's second objection first, as it addresses an issue that is dispositive of this case. In relator's second objection, relator argues that the magistrate erred when she concluded that relator's mandamus action was premature. We agree with the magistrate. Mandamus does not ordinarily lie from an interlocutory order of the commission. State ex rel. Kmart Corp. v. Frantom,86 Ohio St.3d 430, 1999-Ohio-180; see also State ex rel. Daggett v. Gessaman (1973),34 Ohio St.2d 55 (mandamus cannot be employed in an attempt to gain review of an interlocutory order).
 {¶ 4} One of the exceedingly rare instances where mandamus has been utilized to review an interlocutory order is State ex rel. Giel v.Indus. Comm. (1993), 88 Ohio App.3d 96. In Giel, the commission ordered additional medical examinations, but had not issued a final order as to PTD. We issued a writ of mandamus, finding that the order wholly failed to explain the reasons why additional medical examinations were necessary or even helpful before the commission could determine whether the claimant was entitled to PTD compensation.
 {¶ 5} However, this court has before found the Giel case was "a unique example" of this court's exercise of mandamus power. See State ex rel.Hauldren v. Ceg. Personnel *Page 3 Servs., Inc., 10th Dist. No. 03AP-356, 2004-Ohio-1600, ¶ 40. The unique circumstances in Giel were the commission's total silence as to its reasoning, as well as the highly irregular course of proceedings, which made it probable that the claimant would perceive devious or dishonorable motives as the reason for the delays and re-examination.Giel, at 99. This court noted in Giel that, under the circumstances, it was easy to understand why the claimant would infer that the commission is so reticent to grant permanent total disability compensation that it will go to great lengths to delay or avoid such an award. Id. To the contrary, in the present case, the commission fully explained why it ordered either addendums from Drs. Bartos and Van Auken or new independent medical examinations based upon an accurate work history. Therefore, the exception in Giel is not applicable here.
 {¶ 6} The commission in the present case has not yet ruled on the ultimate issue in this case, which is whether relator was entitled to PTD compensation. The commission has merely ordered that further evidence be submitted. This court has before found a mandamus filing premature when the commission determines that more development of the factual record was necessary before PTD compensation could be awarded. See State ex rel. Sitterly v. Indus. Comm., 10th Dist. No. 01AP-954, 2002-Ohio-3281, ¶ 8; see also Hauldren, at ¶ 52, 54 (mandamus action was premature, given that the commission had ordered that relator undergo another examination by another urologist and had not yet issued a final order determining relator's PTD application). In the present case, whether the commission's actions in ordering such submission of further evidence was proper may be the subject of a later mandamus action after the commission ultimately rules on the PTD application. SeeSitterly, at ¶ 10 (because the commission had yet to reach a *Page 4 
definitive ruling on the merits of the PTD application, the complaint for a writ of mandamus was premature; a challenge of the commission's decision to return the matter to the Bureau of Workers' Compensation could be reviewed, if necessary, once a definitive, final order was issued regarding the PTD application). For these reasons, we agree with the magistrate's determination that relator's application for a writ of mandamus was premature. Accordingly, relator's second objection is overruled, and the remaining objection is overruled as moot.
 {¶ 7} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule relator's second objection and find his first objection moot. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and as they relate to whether the action is premature, the conclusions of law, and we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
BRYANT and SADLER, JJ., concur. *Page 5 
 APPENDIX MAGISTRATE'S DECISION Rendered on January 23, 2009 IN MANDAMUS {¶ 8} Relator, John M. Groff, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its April 16, 2008 order postponing its adjudication of relator's permanent total disability ("PTD") application until Drs. Bartos and Van Auken can submit *Page 6 
addendums and/or new reports and ordering the commission to process his application for PTD compensation.
Findings of Fact: {¶ 9} 1. Relator sustained a work-related injury on July 8, 1986, and his claim has been allowed for:
 Heart and lung contusion, fracture right and left ribs, fracture 2nd-8th ribs, fracture 6th left rib, fracture pelvis, dislocation head right clavicle, fracture right scapula, pleuritis and pleural effusion, hematoma contusion lumbar spine, left thigh, right wrist and right forearm, removal of palmaris longus tendon right wrist, post traumatic stress syndrome and depression, benign hypertension.
 {¶ 10} 2. In the early 1990s, the commission determined that relator was entitled to PTD compensation.
 {¶ 11} 3. Sometime later, the Ohio Bureau of Workers' Compensation ("BWC") began investigating relator and it was determined that he was operating a wood pallet recycling business while receiving PTD compensation. The BWC investigators began observing relator in March 2001 and continued, intermittently, for approximately ten months.
 {¶ 12} 4. In May 2005, the BWC filed a motion seeking to terminate relator's PTD compensation and asking that the commission make a finding of fraud as well.
 {¶ 13} 5. The matter was heard before a staff hearing officer ("SHO") on September 13, 2005, and the BWC's motion was granted. The SHO determined that relator had been overpaid PTD compensation for the period March 23, 2001 through September 13, 2005. The SHO noted the following evidence of relator's work activities: *Page 7 
 The evidence in file demonstrates that the injured worker has engaged in sustained remunerative employment in the form of picking up pallets from various area businesses and transporting these pallets to various recycling centers to sell them for cash. The Bureau of Workers' Compensation Special Investigation Unit (SIU) conducted an investigation of the injured worker and the evidence in the SIU report confirms that the injured worker has been working. After nearly ten months of surveillance[,] an interview with the injured worker was conducted on February 9, 2005. * * * In that interview[,] the injured worker admitted that he was working four to five days per week for at least five to six years. The injured worker disclosed that he made multiple trips per day to pick up, transport, and sell pallets to recycling centers.
 The Bureau of Workers' Compensation's Special Investigation Unit conducted surveillance on approximately sixteen different dates spanning the time period April 14, 2003 through February 9, 2005. On almost every surveillance date the injured worker was observed and often photographed loading, unloading, transporting, carrying, and stacking pallets. When confronted with this evidence the injured worker did not dispute these work activities and indicated that he had engaged in this activity on an ongoing basis for approximately four to five days per week for the five to six years preceding the interview. * * *
 {¶ 14} 6. As such, relator's receipt of PTD benefits ceased. It was found that he had been overpaid PTD compensation beginning March 23, 2001, and because of the finding of fraud, the overpayment was to be recouped pursuant to the fraud provision of R.C. 4123.511(J).
 {¶ 15} 7. Approximately two years later, in September 2007, relator reapplied for PTD compensation. Relator's treating physicians opined that he was permanently and totally disabled and incapable of performing any work activity.
 {¶ 16} 8. An independent medical evaluation was conducted by Paul B. Bartos, M.D. In the information section of Dr. Bartos' report, he noted the following information *Page 8 
was given to him by relator: "He has not worked since the date of injury." Thereafter, Dr. Bartos provided his physical findings upon examination and concluded as follows: Relator's allowed physical conditions had reached maximum medical improvement ("MMI"), he assessed a 34 percent whole person impairment based upon the allowed physical conditions, and concluded that relator was incapable of work.
 {¶ 17} 9. An independent medical examination was performed by Steven B. Van Auken, Ph.D., on January 22, 2006. Dr. Van Auken examined relator with regard to his allowed psychological conditions to determine whether he was permanently and totally disabled. Dr. Van Auken took a history from relator and, with regard to relator's work history, relator also informed Dr. Van Auken that he had not been able to work since the date of his injury. Ultimately, Dr. Van Auken concluded that relator's allowed psychological conditions had reached MMI, assessed a 25 percent whole person impairment for relator's posttraumatic stress syndrome and an additional 20 percent impairment for relator's depression. Dr. Van Auken concluded that relator's allowed psychological symptoms, "including substantial diminishments in concentration, stress tolerance, and social skills — would prevent him from succeeding in sustained remunerative employment."
 {¶ 18} 10. On February 20, 2008, relator's counsel submitted a letter to the commission with regard to his application for PTD compensation. Specifically, counsel requested that the commission issue an ex parte order approving relator's application for PTD compensation since both Drs. Bartos and Van Auken agreed that he was incapable of working. *Page 9 
 {¶ 19} 11. In a tentative order dated March 10, 2008 and mailed March 13, 2008, the commission granted relator PTD compensation based upon the medical reports of Drs. Thomas E. Pickton, Ph.D., Timothy Lee Hirst, M.D., Van Auken and Bartos.
 {¶ 20} 12. On March 13, 2008, the BWC objected to the tentative order and requested that relator's application be set for hearing.
 {¶ 21} 13. The matter was heard before an SHO on April 16, 2008. At that time, the SHO vacated the prior tentative order awarding PTD compensation as follows:
 Review of these reports reveals they are predicated upon incorrect information. Dr. Van Auken and Dr. Bartos both indicate under the occupational history that the injured worker has not worked in any capacity since being injured in this claim on 7/8/1986. Neither of these reports reveals that the evaluators were aware that the injured worker had engaged in sustained remunerative employment in the recent past.
 As a result of the injury sustained in this claim, the injured worker was previously found to be permanently and totally disabled. However, the injured worker's permanent total disability benefits were terminated as the injured worker was found to be engaged in sustained remunerative employment from 2001 through 2005. Specifically, surveillance evidence revealed the injured worker was engaged in the physical activities of loading, unloading, transporting, carrying, and stacking wood pallets for recycling. The evidence obtained by the Special Investigation Unit (SIU) of the Bureau of Workers' Compensation revealed the injured worker had been engaged in these activities on an ongoing basis for several years at the frequency of four to five days per week.
 Neither Dr. Van Auken nor Dr. Bartos was aware of the injured worker's work activities. Neither evaluator indicates knowledge of the prior permanent total disability adjudication, the evidence which revealed sustained remunerative employment for five years in self-employment, or the termination of permanent total disability benefits on the grounds that the injured worker was working. The 9/13/2005 Staff Hearing Officer order which found the injured worker was working, found the injured worker was ineligible for the *Page 10 
receipt of permanent total disability benefits, and found the injured worker to have engaged in fraudulent activities to continue the receipt of permanent total disability benefits was not appealed by the injured worker.
 Dr. Van Auken does make the reference to "fraud" but does not elaborate. Therefore, it cannot be ascertained from his report that he was aware that permanent total disability benefits were terminated and ordered recouped pursuant to the fraud provisions of the former Ohio Revised Code Section 4123.511(J).
 As the 1/25/2008 report of Dr. Van Auken and the 1/26/2008 report of Dr. Bartos are predicated upon an incorrect occupational history and do not discuss the physical or mental activities in which the injured worker engaged to perform this sustained remunerative employment, neither report is found to be probative or persuasive. Therefore, the Industrial Commission is to obtain either addendum reports from these two evaluators or new examinations which consider a complete and accurate work history. After these new reports have been obtained, the Industrial Commission is to process the IC-2 application filed 9/12/2007.
 {¶ 22} 14. As such, the commission has ordered that either Drs. Bartos and Van Auken prepare addendums to their reports after taking into consideration the fact that relator had been involved in sustained remunerative employment for several years in the recent past or that the commission order new evaluations.
 {¶ 23} 15. Relator filed a motion for reconsideration arguing that the commission did not have authority to request those addendums or to request additional medical reports because the time for submitting medical evidence had already passed. As such, relator argued that the tentative order awarding him PTD compensation should remain in effect.
 {¶ 24} 16. By order mailed July 26, 2008, the commission denied relator's for reconsideration. *Page 11 
 {¶ 25} 17. Thereafter, relator filed the instant mandamus action requesting that this court issue a writ of mandamus ordering the commission to vacate its order which vacated the prior finding that he was permanently and totally disabled and which sought addendum reports by Drs. Bartos and Van Auken or additional medical examinations and ordering the commission to grant him PTD compensation.
Conclusions of Law: {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 27} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson *Page 12 v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision.State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 28} For the reasons that follow, this court should deny relator's request for a writ of mandamus.
 {¶ 29} First, relator's mandamus action is premature. The commission has not yet ruled on his application for PTD compensation. The commission's order which relator challenges is nothing but an interlocutory order and does not adjudicate the merits of relator's PTD application. As such, relator has failed to exhaust his administrative remedies and relief in mandamus is inappropriate. Pressley.
 {¶ 30} Should the court choose to address the merits of relator's mandamus action, a writ of mandamus is not appropriate.
 {¶ 31} Relator attempts to use various provisions of the Ohio Administrative Code for the assertion that the commission abused its discretion when it sought addendums from Drs. Bartos and Van Auken or new medical reports. Relator first cites a portion of Ohio Adm. Code 121-3-34(C)(4). This section provides that the injured worker is responsible for providing copies of medical records, information, and reports upon which the injured worker intends to rely. Thereafter, the employer has 14 days from the date of the commission's acknowledgement letter to notify the commission that the employer intends to submit medical evidence relating to the issue of PTD compensation. Thereafter, the rule provides that if either the injured worker or the employer, after making *Page 13 
a good-faith effort to obtain medical evidence, but has been unable to obtain such evidence, a subpoena may be issued to obtain that evidence. Relator then cites Ohio Adm. Code 4121-3-34(C)(4)(d) which provides:
 * * * Thereafter, no further medical evidence will be admissible other than additional medical evidence approved by a hearing administrator that is found to be newly discovered medical evidence that is relevant to the issue of permanent total disability and which, by due diligence, could not have been obtained[.] * * *
 {¶ 32} As additional authority, relator quotes from Ohio Adm. Code 121-3-34(C)(9) which provides:
 * * * After the pre-hearing conference, unless authorized by the hearing administrator, no additional evidence on the issue of permanent and total disability shall be submitted to the claim file. If the parties attempt to submit additional evidence on the issue of permanent and total disability, the evidence will not be admissible on the adjudication of permanent total disability compensation.
 {¶ 33} Relator asserts that the above provisions of the administrative code apply here and bar the commission from obtaining either the addendums or new medical reports. This magistrate disagrees. First, both of the sections cited by relator pertain to the submission of medical evidence by the injured worker and the employer, not the commission. Further, both sections provide that the hearing administrator has the authority to authorize the submission of additional evidence. As such, neither of these sections actually applies to the facts in this case.
 {¶ 34} Relator also cites State ex rel. Meris v. Indus. Comm.,108 Ohio St.3d 113, 2006-Ohio-247, in support of his argument. For the reasons that follow, the magistrate finds that relator's reliance onMeris is misplaced. *Page 14 
 {¶ 35} In Meris, the claimant was injured in 1994 and filed an application for PTD compensation in 2001. On that application, the claimant indicated that he had been a laborer from 1987 to 1994 and a painter after 1994. The commission granted the claimant's application for PTD compensation. The BWC sought reconsideration because the claimant had not told the examining physicians that he had sold fish intermittently since 1994. Because the medical reports upon which the commission originally relied did not contain information about the claimant's fish selling, the commission found the reports defective and denied him PTD compensation.
 {¶ 36} The claimant filed a writ of mandamus in this court and, after overruling objections to the magistrate's decision, this court sustained objections and denied the writ finding that the commission did not abuse its discretion in finding the medical reports to be defective.
 {¶ 37} The claimant appealed and the Supreme Court of Ohio reversed the judgment of the court of appeals after finding that the medical reports were not fatally defective. The Meris court stated that an examining physician's lack of knowledge that the claimant had worked years before he applied for PTD compensation had no bearing on the claimant's medical condition and capacity for work at the time they examined him. As such, the court found that the lack of reference to that job in the disputed medical reports did not render the reports fatally defective and found that the initial SHO did not commit clear error in relying on them.
 {¶ 38} In the present case, the commission awarded relator PTD compensation in 1994. As such, the commission determined that, based upon the medical evidence in the record, relator was incapable of performing some sustained remunerative employment. *Page 15 
Thereafter, in 2005, the BWC submitted evidence that relator had been working while receiving PTD compensation since, at least, March 2001. Relator was working while receiving PTD compensation; as such, contrary to the evidence presented in 1994 when relator was granted PTD compensation, he was, indeed, capable of performing some sustained remunerative employment. Based upon the evidence presented by the BWC, the commission terminated relator's PTD compensation, declared an overpayment, found that relator committed fraud in accepting those benefits while working, and ordered that the overpayment be recouped pursuant to R.C. 4123.511(J).
 {¶ 39} Two years later, relator filed another application for PTD compensation, again arguing that he is incapable of performing some sustained remunerative employment. The commission sent relator to two doctors for independent medical examinations to determine whether relator was capable of working. Relator failed to tell those two examiners that he was involved in work activities from 2001 through 2005. Instead, relator informed them that he had not worked for 21 years — not since his July 1986 date of injury. Clearly, relator failed to provide the medical examiners accurate and truthful information. Following their medical examinations, and based upon the facts as they knew them, both Drs. Bartos and Van Auken concluded that relator was incapable of performing work activity. Dr. Bartos noted that relator's range of motion findings resulted in minimal impairment. The majority of the 34 percent whole person impairment was assigned exclusively for the allowed condition of hypertension. Dr. Van Auken concluded that relator's psychological conditions would prevent him from succeeding in sustained remunerative employment. *Page 16 
 {¶ 40} Thereafter, relator sought an ex parte order from the commission granting PTD compensation since all the medical evidence in the record indicated that he was incapable of working. The BWC objected and asked for a hearing. The BWC argued that the reports of Drs. Bartos and Van Auken could not be relied on because relator had deceived the doctors and it was possible that their opinions would have been different if they had known that relator had been working just two years before they examined him.
 {¶ 41} Relator already benefited from his dishonesty once. Relator was working while receiving PTD compensation and further, for five years, relator certified that he was not working. Once the commission determined the nature and extent of relator's activity, the commission terminated his PTD compensation and declared an overpayment recoupable pursuant to the fraud provisions of the Ohio Revised Code. Now, relator seeks to benefit by his dishonesty a second time. Because relator never thought his work activities from 2001 through 2005 really constituted work and because he stopped those activities after the commission terminated his PTD compensation, relator states that his failure to tell the doctors about his work activity would have had no effect on their ultimate conclusions. This magistrate strongly disagrees.
 {¶ 42} The commission did not abuse its discretion by seeking addendum reports from Drs. Bartos and Van Auken or new independent examinations. The independent medical examiners need to have a complete and accurate recitation of the facts so that they can render their opinions. Here, both doctors were told by relator that he had not worked for 21 years. Because relator's work activities were sustained over a number of years, and because he only stopped those activities when his PTD compensation was terminated, and because those activities preceded his second application for PTD *Page 17 
compensation by only two years, the commission did not abuse its discretion. His deceit (I have not worked for 21 years) and his sustained and greater than sedentary social work activity is relevant and could impact the opinions of Drs. Bartos and Van Auken.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator's mandamus action is premature as he has an adequate remedy at law available at the commission level. Further, even considering the merits of this case, the magistrate would deny relator's request for a writ of mandamus because the commission did not abuse its discretion in seeking addendums from Drs. Bartos and Van Auken or new independent medical examinations which were actually based on true information instead of being based on inaccurate information provided by relator. *Page 1