[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 509.]

THE STATE EX REL. CLARK, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Clark v. Indus. Comm.*, 1997-Ohio-189.]

*Workers' compensation—Application for permanent total disability compensation held in abeyance pending another medical examination and combined-effects review—Industrial Commission abuses its discretion under former R.C. 4123.53, where record fails to disclose that additional medical examinations are necessary in determining permanent total disability.*

—————————

The Industrial Commission abuses its discretion under former R.C. 4123.53, where the record fails to disclose that additional medical examinations are necessary or of assistance in determining permanent total disability.

—————————

(No. 95-432—Submitted March 18, 1997—Decided June 4, 1997.)

Appeal from the Court of Appeals for Franklin County, No. 93APD10-1454.

—————————

{¶ 1} Claimant-appellant, Imogene M. Clark, received two injuries in the course of and arising out of her employment as a store manager with United Dairy Farmers. Her first injury occurred on July 22, 1981, and was allowed by appellee, Industrial Commission of Ohio, for "[s]wollen and sprain right leg." This claim was assigned claim No. 81-22100. Her second injury occurred on August 21, 1983, and was allowed by the commission for "[f]racture left lower leg; torn medial meniscus, left knee; vasicosilis vein with phlebitis; exacerbation of pre-existing dysthymic disorder, generalized anxiety disorder, psychological factors affecting

physical condition." This claim was assigned claim No. 83-19859. Claimant has not been gainfully employed since August 21, 1983.

{¶ 2} In April 1988, claimant filed an application for permanent total disability ("PTD") compensation. On July 10, 1989, the commission ordered claimant to report for two medical examinations on the issue of PTD. On July 19, 1989, claimant was examined by commission specialist Daniel E. Braunlin, M.D., an orthopedist. Dr. Braunlin assessed a ten percent permanent partial impairment ("PPI") attributable to the musculoskeletal factors in the claim and found claimant unable to return to her previous duties. He felt that claimant could perform sedentary work and that, by participating in vocational rehabilitation, "could be progressed to *** possibly even a level of light activity work."

{¶ 3} On July 28, 1989, claimant was examined by commission specialist Peter E. Nims, M.D., a psychiatrist. Dr. Nims opined that claimant's allowed psychiatric impairments "represent a low degree, twenty to twenty-five per cent." However, he felt that claimant's "combined impairments would prohibit her from any sustained remunerative employment because of her chronic pain, her preoccupation with her symptoms, and limited interest and poor concentration."

{¶ 4} On May 24, 1991, the commission ordered claimant to report for another round of medical examinations, this time with commission specialists Clarence J. Louis, M.D., and Giovanni M. Bonds, Ph.D. Dr. Louis assessed a "0% impairment" attributable to the injury in claim No. 81-22100, and a twenty percent PPI attributable to the allowed physical conditions in claim No. 83-19859. Dr. Louis also opined that claimant cannot return to her former position of employment but, with rehabilitation, could return to sedentary work.

{¶ 5} Dr. Bonds concluded that claimant's allowed psychological conditions produce a twenty percent PPI, "prohibit her from engaging in any sustained remunerative employment," and render her "not psychologically stable

2

enough to participate in rehabilitation services, and [make] it unlikely that any programs available would return this claimant back to gainful employment."

{¶ 6} On February 10, 1992, a combined-effects review was performed by commission specialist Merle Gibson, M.D. Dr. Gibson concluded that claimant suffers a forty percent total combined-effects impairment and is psychologically unable to engage in any sustained remunerative employment.

{¶ 7} On June 4, 1992, a statement of facts was prepared for the commission by its attorney unit. The statement writer offered no recommendation on the issue of PTD, explaining that, "[a]lthough both Commission Psychologist Dr. Bonds and combined effects review by Dr. Gibson opine that claimant is not capable of sustained remunerative employment, the % P.P.I. are low, and Orthopod Dr. Lewis [*sic*] finds claimant to be capable of sustained remunerative employment."

{¶ 8} On June 30, 1992, claimant's application for PTD compensation was heard by the commission. However, the commission decided to hold claimant's application in abeyance pending yet another psychological examination to be followed by another combined-effects review, after which the "claim(s) [would] be returned to the Commission for order without further hearing."

{¶ 9} Accordingly, on September 11, 1992, claimant was ordered to report for a medical examination with commission specialist Jill Shaffer, Ph.D., a clinical psychologist. Dr. Shaffer assessed a twenty-five percent PPI "due to the industrial injury in itself, and not to pre-existing conditions," and concluded that "the industrial injury in itself does not prevent Ms. Clark from returning to her former position of employment."

{¶ 10} Thereafter, a combined-effects review was performed by commission specialist Walter A. Holbrook, M.D. Dr. Holbrook assessed a fifty-four percent PPI as a result of all allowed conditions and concluded that claimant was not medically incapable of performing her former duties of employment, but was capable of performing some sustained remunerative employment. He

essentially imposed a restriction of light duty work with the additional caveat that claimant cannot perform occupations "requiring close association with other employees or with the general public."

{¶ 11} On August 18, 1993, the commission, without further hearing, issued its order finding claimant not permanently and totally disabled and, therefore, denied her application for PTD compensation. The commission based its order "particularly upon the report(s) of Dr.(s). Louis, Shaffer, and Holbrook, evidence in the file and evidence adduced at the hearing."

{¶ 12} Claimant filed a complaint in mandamus with the Court of Appeals for Franklin County, seeking a writ directing the commission to grant her application for PTD compensation. Claimant alleged that the commission "abused its discretion by having [her] re-examined by new Industrial Commission doctors after the June 30, 1992 hearing," and that "[t]here is no reasonable basis to conclude that [she] is capable of engaging in sustained remunerative employment."

{¶ 13} The referee concluded that the commission did not abuse its discretion when it sought another psychological examination and combined-effects review following the June 30, 1992 hearing. He did recommend, however, the issuance of a limited writ pursuant to *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 14} The court of appeals essentially adopted the referee's findings of fact and conclusions of law, with one judge dissenting. The majority held, in particular, that relief under *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, is inappropriate under the circumstances. It found that Dr. Holbrook's report and claimant's age (fifty-six) provides "some evidence" that claimant is not permanently and totally disabled. Thus, "the commission should be given another opportunity to explain the reasoning for its decision." The dissenting judge stated that, "[c]onsidering the report of Dr. Holbrook and the nonmedical factors, it is unlikely the respondent commission could find a basis for properly concluding that

\*\*\* [claimant is able] to engage in *sustained* remunerative employment." (Emphasis *sic*.)

{¶ 15} This cause is before the court upon an appeal as of right.

*Hochman & Roach Co., L.P.A.*, and *Gary D. Plunkett*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Melanie Cornelius*, Assistant Attorney General, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 16} The issue presented is whether the commission abused its discretion when it decided at the June 30, 1992 PTD hearing to schedule a third psychological examination followed by another combined-effects review.[1]

{¶ 17} The commission argues that R.C. 4123.53 empowers it to have a claimant examined to determine her right to workers' compensation benefits and "does not limit the number of such examinations."

{¶ 18} Former R.C. 4123.53 (now R.C. 4123.53[A]) provided that "[a]ny employee claiming the right to receive compensation may be required by the industrial commission to submit himself for medical examination *at any time, and from time to time* \*\*\*." (Emphasis added.) 1953 H.B. No. 1. This statute gives the commission broad discretion with regard to requiring a claimant to submit to medical examinations. *State ex rel. Anderson v. Indus. Comm.* (1984), 9 Ohio St.3d 170, 172, 9 OBR 456, 459 N.E.2d 548, 551.

---

1. Claimant phrases her challenge in constitutional terms, and accuses the commission of repeatedly examining her in an effort to "manufacture" some evidence upon which to deny her application for PTD compensation. Claimant alleges that the commission "has engaged in a pattern of manufacturing evidence with a view towards denying permanent total disability compensation," citing two unreported appellate cases with facts similar to those presently before the court. Such grandiose remonstrations need not be addressed. The gravamen of claimant's challenge is simply that the commission abused its discretion when it decided at the June 30, 1992 PTD hearing to schedule a third psychological examination followed by another combined-effects review.

{¶ 19} The commission's discretion under former R.C. 4123.53, however, is not unlimited. While former R.C. 4123.53 imposes no specific limit on the number of medical examinations that the commission may schedule, on any given issue, neither does it permit the commission to act in an unreasonable, arbitrary or unconscionable fashion in its determination to schedule them. Propriety, not aggregation, is the polestar of discretion in this case. Indeed, the very concept of discretion connotes action taken in light of reason, and bounded by the rules and principles of law. Discretion is not the indulgence of administrative whim, but the exercise of sound judgment. It is a privilege of decision-making, not to be placed ahead of the responsibility to act fairly and judiciously. Thus, as in other matters, the commission must exercise its discretion with regard to requiring a claimant to submit to medical examinations "soundly and within legal bounds." See *State ex rel. Goodyear Tire & Rubber Co. v. Indus. Comm.* (1974), 38 Ohio St.2d 57, 62, 67 O.O.2d 74, 77, 310 N.E.2d 240, 244; *Copperweld Steel Co. v. Indus. Comm.* (1944), 142 Ohio St. 439, 445, 27 O.O. 376, 378, 52 N.E.2d 735, 737-738.

{¶ 20} Accordingly, we hold that the commission abuses its discretion under former R.C. 4123.53 where the record fails to disclose that additional medical examinations are necessary or of assistance in determining PTD.

{¶ 21} The commission argues that it had "sound reasons for its course of action in this matter." Since the claimant's complaint is directed toward the medical activity which occurred "after the June 30, 1992 hearing," the court need only concern itself with the commission's reasons for referring claimant to psychologist Dr. Shaffer for examination and the claim file to Dr. Holbrook for a combined-effects review.

{¶ 22} The commission claims that the additional psychological examination by Dr. Shaffer was necessary because Dr. Bonds "addressed a non-allowed psychological condition in his report. Thus, his report could not be used as evidence in this matter." The commission explains that Dr. Bonds took "into

account a chronic pain syndrome which was never recognized as an allowed condition."

**{¶ 23}** With all due respect to the commission, nowhere in his report does Dr. Bonds even mention a "chronic pain syndrome." The only reference to "chronic pain" is made in conjunction with claimant's *complaints*. At no time does Dr. Bonds purport to elevate such complaints to the level of a "syndrome," "condition," or any such degree of recognition, let alone rely upon it in rendering his opinion. Instead, he very carefully and appropriately based his opinions solely on claimant's allowed psychological injuries:

"(1) *the claimant's industrial injuries[,] i.e., excerbation [sic] of pre-existing dysthymic disorder, generalized anxiety disorder, and psychological factors affecting physical condition*, prevent her from returning to her former position of employment. Her condition is permanent and the degree of permanent impairment resulting from the industrial accident is 20% of the body as a whole.

"(2) the claimant's *industrial injuries* do prohibit her from engaging in any sustained remunerative employment. \*\*\*" (Emphasis added.)

**{¶ 24}** Dr. Bonds did not address "a non-allowed psychological condition in his report" or take "into account" anything other than claimant's allowed psychological injuries in rendering his opinions.

**{¶ 25}** The commission next argues that Dr. Louis "concluded that [claimant] was limited to sedentary work but documented minimal impairment. Then Dr. Gibson did a combined effects review. \*\*\* He equated a forty percent impairment with permanent total impairment. In doing so contradictory conclusions deprived his report of its evidentiary value. \*\*\* Rather than proceed with such defective evidence, the Industrial Commission chose to solve the problem prior to making its ultimate decision." (Citation omitted.)

**{¶ 26}** The commission's reasoning with regard to the report of Dr. Louis is arbitrary. The commission's order was "based particularly upon the report(s) of

7

Dr(s). Louis ***." Indeed, the very finding made by the commission based on Dr. Louis's report was that claimant "is physically capable of engaging in some sustained remunerative employment." This report also helped to form the basis for the commission's conclusion that "claimant possesses the medical capacity to engage in a number of sedentary or light duty employment opportunities." In fact, the commission's order actually accepts Dr. Louis's findings with respect to *both* claimant's PPI *and* physical ability to work, which are the very "defects" the commission purportedly sought to remedy. In a feat of twisted logic, the commission has managed to argue that an additional psychological examination and combined-effects review were justified on the basis of a purportedly "defective" report going to claimant's physical capabilities upon which the commission ultimately relied in denying PTD compensation.

{¶ 27} Moreover, there is no inherent contradiction between a twenty-percent impairment rating and a sedentary work restriction. See *State ex rel. Koonce v. Indus. Comm.* (1994), 69 Ohio St.3d 436, 633 N.E.2d 520.

{¶ 28} As to Dr. Gibson, his report explains that "[p]sychologically, claimant *** cannot return to any gainful sustained remunerative employment now, or in the foreseeable future. Psychiatric evaluation of impairment, *even with low to moderate percentage values*, point to the total and permanent nature of her condition." (Emphasis added.) It is in this context that Dr. Gibson subsequently concluded that claimant "is totally and permanently impaired." The commission is acutely aware that the assessment of a PPI percentage is a medical issue distinct from that of claimant's ability to engage in sustained remunerative employment based on her industrial injuries. Otherwise, it would not direct its medical specialists to assign a PPI percentage and then go on to make a medical determination of claimant's ability to engage in sustained remunerative employment.

**{¶ 29}** In light of the foregoing, it must be concluded that the commission abused its discretion when it decided at the June 30, 1992 PTD hearing to schedule a third psychological examination followed by another combined-effects review.

**{¶ 30}** The commission also argues that claimant "sat on her right to challenge the examining physician's opinion. She failed to exercise her right to depose the examining physicians involved. *** Nor does the record indicate [that claimant] made any attempt to challenge or thwart such examinations at the time they were conducted."

**{¶ 31}** The only "examining physician's opinion" that is challenged by claimant is that of Dr. Shaffer. However, the commission misconstrues the nature of the challenge. Claimant's challenge goes not to the propriety of Dr. Shaffer's opinion itself, but to the commission's order requiring the claimant to submit to the examination in the first place. We fail to see how deposing Dr. Shaffer has anything to do with the commission's decision to schedule the examination. Moreover, former R.C. 4123.53 (now R.C. 4123.53[C]) provided, "If such employee refuses to submit to any such examination or obstructs the same, his right to have his claim for compensation considered *** shall be suspended during the period of such refusal or obstruction." The commission cites no authority for the proposition that a claimant must make the Hobson's choice of waiving her challenge or having her right to consideration suspended.

**{¶ 32}** Once the reports of Drs. Shaffer and Holbrook are stricken from evidentiary consideration, the only conclusion that can be reached is to grant relief consistent with *Gay*. All the remaining evidence unanimously indicates that the claimant is psychologically unable to engage in any sustained remunerative employment or participate in any rehabilitative program that would return her to gainful employment.

**{¶ 33}** For the foregoing reasons, we reverse the judgment of the court of appeals.

*Judgment reversed*
*and writ granted.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 34} Because I find that the Industrial Commission had good cause to order an additional examination, I do not agree that the commission abused its discretion in this matter. Therefore, I would affirm the judgment of the court of appeals.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____