[Cite as *State ex rel. Mignella v. Indus. Comm.*, 2017-Ohio-8831.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mary Mignella, | : | |
| Relator, | : | |
| v. | : | No. 16AP-441 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on December 5, 2017

**On brief:** *Green Haines Sgambati Co., LPA, Shawn D. Scharf,* and *Charles W. Oldfield,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN PROCEDENDO
ON OBJECTION TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Mary Mignella, has filed this original action requesting that this court issue a writ of procedendo ordering respondent Industrial Commission of Ohio ("commission") to vacate two orders that (1) refer relator for permanent total disability ("PTD") compensation for another medical examination, and (2) suspend the application until relator appears for another medical examination. Relator requests the writ order the commission to proceed to final judgment on the PTD application absent another medical report from a physician of the commission's choice.

{¶ 2} The writ of procedendo action was referred to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The

magistrate issued the attached decision, including findings of fact and conclusions of law, and recommended this court deny relator's writ of procedendo. Relator has filed an objection to that decision.

{¶ 3} In his decision, the magistrate reasoned that it is, at best, premature for relator to challenge the administrative proceedings of the commission, and relator has an adequate remedy by submitting to the additional medical examination and then arguing the merits of her PTD application based on the evidence.

{¶ 4} In her objection, relator argues she does not have an adequate administrative remedy. She claims that requiring her to attend a second commission specialist examination that is not legally required is not an adequate remedy. Relator claims that if there were to be consideration of any additional examinations on the issue of PTD, the Ohio Administrative Code would have outlined such. She argues there is no legal mechanism within the framework of the Ohio Administrative Code to conduct repeated examinations simply because the commission determines at a merit hearing that it is not satisfied with its first examination. She points out that neither an injured worker nor employer is provided an opportunity to continue a merit hearing and attempt to remedy inconsistent or insufficient medical evidence by obtaining further medical evidence.

{¶ 5} We find relator's objection to be without merit. In reaching its determination, the magistrate relied on R.C. 4123.53(A) and (C), Ohio Adm.Code 4121-3-12, and *State ex rel. Clark v. Indus. Comm.*, 78 Ohio St.3d 509 (1997). R.C. 4123.53(A) permits the commission to require an employee to submit to a medical examination "at any time" and "from time to time" as provided by the rules of the commission or the commission administrator. R.C. 4123.53(C) and Ohio Adm.Code 4121-3-12 provide that the employee's right to have her claim considered is suspended if the employee refuses to submit to a medical examination. *Clark* interpreted R.C. 4123.53 (now R.C. 4123.53(A)), and found that R.C. 4123.53 does not limit the number of medical examinations that the commission may schedule, although the commission may not act in an unreasonable, arbitrary, or unconscionable way in scheduling such, and the additional medical examinations must be necessary or of assistance in determining PTD.

{¶ 6}   We agree with the magistrate that the order of the staff hearing officer ("SHO") provided a reasonable explanation for why an additional medical examination was necessary and would be of assistance. The SHO explained that Dr. Elizabeth Mease's examination did not correspond with the guidelines outlined by the American Medical Association. Because R.C. 4123.53(A) permits the commission to require an employee submit to a medical examination at any time, *Clark* indicates there is no limit on the number of medical examinations the commission may schedule so long as they are reasonable and necessary or of assistance, and R.C. 4123.53(C) and Ohio Adm.Code 4121-3-12 allow the commission to suspend consideration of a claim until the employee submits to an ordered medical examination; we cannot find the SHO had a duty to proceed in the present case when relator refused to submit to the additional medical examination. In addition, although not cited by the magistrate, Ohio Adm.Code 4121-3-09(A)(1)(b)(5) provides that the commission may "at any point in the processing of an application for benefits" require the employee to submit to a physical examination. This code section provides further authority for the SHO's order for relator to undergo an additional examination.

{¶ 7}   Insofar as relator also argues that she does not have an adequate remedy in the ordinary course of law, we disagree. Relator's argument is largely premised on the belief that the remedy of undergoing the additional medical examination and then arguing the merits of her PTD application is inadequate because the additional medical examination is not "legally" required. However, we have found above that the commission has the authority to order medical examinations at any time. Furthermore, as cited by the magistrate, this court has before found, in *State ex rel. Daniels v. CHS Greystone, Inc.*, 10th Dist. No. 11AP-394, 2012-Ohio-2268, that a claimant had an adequate remedy at law by way of a final commission determination after being required to submit to an additional medical examination. In *Daniels*, as in the present case, we found the writ action was premature, after the claimant tried to file a request for writ challenging the commission's interlocutory order that rejected an initial medical examination and ordered an additional examination. Therefore, we find this argument without merit.

{¶ 8}   After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule

the objection and adopt the magistrate's findings of fact and conclusions of law. Relator's request for a writ of procedendo is denied.

*Objection overruled; writ of procedendo denied.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Mary Mignella, | : | |
| Relator, | : | |
| v. | : | No. 16AP-441 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Ohio Bureau of Workers' Compensation, | : | |
| Respondents. | : | |

### MAGISTRATE'S DECISION

### Rendered on July 18, 2017

*Green Haines Sgambati Co., LPA, Shawn D. Scharf,* and *Charles W. Oldfield,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

### IN PROCEDENDO

{¶ 9} In this original action, relator, Mary Mignella, requests a writ of procedendo ordering respondent Industrial Commission of Ohio ("commission") to vacate two orders that (1) refer the applicant for permanent total disability ("PTD") compensation for another medical examination and (2) suspend the application until relator appears for another medical examination. Relator requests that the writ order the commission to proceed to final judgment on the PTD application absent another medical report from a physician of the commission's choice.

Findings of Fact:

{¶ 10} 1. On March 9, 2011, relator sustained an industrial injury while employed as a teacher for respondent Warren City School District.

{¶ 11} 2. The industrial claim (No. 11-313410) is allowed for a number of physical conditions.

{¶ 12} 3. On December 10, 2014, at her request, relator was examined by chiropractor Denise M. Carradine, D.C. Dr. Carradine examined for all the allowed conditions of the industrial claim. In her 12-page narrative report, Dr. Carradine opined:

> Based on the patient history, physical examination including orthopedic and neurological testing, computerized range of motion testing, computerized muscle testing, the allowed conditions in this claim, and the 5th edition of the AMA Guidelines, it is my professional opinion that this patient has sustained a 69% permanent physical impairment of the body as a whole.

{¶ 13} 4. On January 9, 2015, Dr. Carradine completed a form captioned "Physical Strength Rating." On the form, Dr. Carradine indicated by her mark "[t]his Injured Worker is incapable of work."

{¶ 14} 5. On January 16, 2015, relator filed an application for PTD compensation. In support, relator submitted the reports of Dr. Carradine.

{¶ 15} 6. On June 3, 2015, at the commission's request, relator was examined by Elizabeth Mease, M.D. In her six-page narrative report, Dr. Mease stated:

> **PURPOSE OF EXAMINATION:** To assist the Industrial Commission in consideration of the injured worker's request for permanent total disability, I have been asked to (1) formulate an opinion as to whether or not the injured worker has reached maximum medical improvement for each/all of the allowed condition(s) in the claim(s); (2) estimate the percentage of whole person impairment for each/all of the allowed condition(s) according to the *AMA Guides, 5th Edition,* and; (3) what type of work activities, if any, the injured worker is capable of, solely with regard to the allowed condition(s) in the claim(s). I have been asked [to] evaluate and will only consider those physical allowed conditions for which I am qualified by training and experience.
>
> * * *

**OCCUPATIONAL HISTORY:**
Ms. Mary Mignella is a 59 year old former employee of Warren City Schools and Youngstown State University. She was employed at Warren City Schools for 35 years. She taught special education, regular education and gifted. She last worked 2 years ago.

**HISTORY OF THE PRESENT CONDITION:**
On the day of the injury of 3-09-2011, she fell at work/1st floor. She reports that she landed on her leg, back and shoulder. She broke her teeth. She drove home. Her husband took her [to] St. Elizabeth Hospital emergency department. It was noted that she injured her front teeth, arm, knees, back, and nose. The impression was intra-oral laceration.

She sought care with Dr. Marakas. She underwent dental procedures for teeth repair.

On 3-11-2011, Dr. Carradine, DC, evaluated her and provided the impression of lumbosacral sprain and strain, lumbar sprain and strain and sacroiliac sprain and strain, thoracic sprain and strain, cervical sprain and strain, and left shoulder sprain and strain. Dr. Carradine provided chiropractic treatments.

* * *

**CURRENT SYMPTOMS:**
She has chronic low back and pain in both shoulders. She has numbness in her feet. She has pain and numbness in her left arm. She lacks strength. She has difficulty sleeping; she sleeps for 2 hours at a time. She has difficulty standing.

**IMPACT ON ACTIVITIES:**
It is difficult for her to stand and sit. She is able to clean and cook but only in short segments. Her activities are shortened. H[er] husband carries the laundry. She does grocery shopping in short segments. She avoids heavy carrying.

* * *

**DISCUSSION**
Ms. Mary Mignella is a 59 year old woman who was injured on 3-09-2011 when she fell on the 1st floor at work. The claim is allowed for sprain lumbosacral, sprain lumbar region, sprain sacroiliac, sprain thoracic region, neck sprain,

left shoulder sprain, open wound lip, necrosis of pulp teeth 8 and 9, lumbar intervertebral disc displacement L4-5 and L5-S, bulging disc without myelopathy C5-6, cervical intervertebral disc displacement C6-7 and C7-T1. She had dental repairs. She has been treated with medications and extensive chiropractic therapy. Current findings reveal limitation in active cervical, shoulder and lumbar range of motion. Passive range of motion of shoulders is within normal limits. Upper and lower extremity reflexes are intact. Upper extremity and lower extremity motor function is 5/5 and symmetric.

**OPINION:** The following opinion is based on today's history and physical examination, review of the records provided, and only the allowed conditions in this claim.

* * *

For each of the allowed physical conditions of the claim, she has reached maximum medical improvement. Further formal treatment (e.g. surgery, injections, therapy) will not provide any significant functional or physiological improvement.

* * *

It is my opinion that the combined whole person impairment for the allowed condition(s) in this/these claim(s) is: 15%.

* * *

She is able to perform light physical demand activities. She cannot sit or stand longer than 15 to 20 minutes at a time.

{¶ 16} 7. On June 17, 2015, Dr. Mease completed a form captioned "Physical Strength Rating." On the form, Dr. Mease indicated by her mark "[t]his injured worker is capable of work as indicated below." By her mark, Dr. Mease indicated that relator is capable of "light work."

{¶ 17} The form asks the examining physician for "[f]urther limitations, if indicated." In the space provided, Dr. Mease stated: "She cannot sit or stand longer than 15 minutes at a time."

{¶ 18} 8. On July 6, 2015, relator moved for leave to depose Dr. Mease.

{¶ 19} 9. Following an August 18, 2015 hearing, a staff hearing officer ("SHO") issued an order granting leave to depose Dr. Mease.  The SHO's order explained:

> In order to provide fair adjudication of the pending issues, the Staff Hearing Officer finds that it is necessary to grant the request, because the "further limitations" listed by Dr. Mease under the light work category stated that [the Injured Worker] cannot sit or stand longer than 15 minutes at a time," and this would be in contradiction to the definition of light work as set [forth] on the 06/17/2015 physical strength rating report.
>
> The claim file is referred to the Akron Hearing Administrator to oversee the scheduling of the deposition, pursuant to Ohio Admin. Code 4123-3-09(A)(6).

{¶ 20} 10. On October 28, 2015, relator deposed Dr. Mease.  The deposition was recorded and transcribed for the record.

{¶ 21} 11. On February 25, 2016, pursuant to notice, an SHO heard the PTD application.  On March 3, 2016, the SHO mailed an "interlocutory order" referring the PTD application for the scheduling of a new examination.   The SHO's order of February 25, 2016 explains:

> It is the finding of the Staff Hearing Officer that said IC-2 application filed 01/16/2015 is hereby referred back to the Industrial Commission for further processing of the application by scheduling the Injured Worker for a new examination on the issue of permanent total disability in the ordinary manner as the Staff Hearing Officer finds pursuant to the deposition which was conducted on 10/28/2015 with Elizabeth Mease, M.D. who performed the permanent total disability examination on behalf of the Industrial Commission admitted during said deposition to making various mistakes in conducting her exam which did not correlate or correspond with guidelines outlined in the American Medical Association in order to make an accurate determination regarding whether the Injured Worker was permanently and totally disabled or not.
>
> Once said examination has been performed, the file is hereby reset on the next available Staff Hearing Officer Permanent Total Disability docket and processed in the ordinary manner.
>
> * * *

> This order is interlocutory in nature and not subject to appeal pursuant to the Ohio Adm.Code 4121-3-09.

{¶ 22} 12. On March 14, 2016, relator requested a pre-hearing conference, citing Ohio Adm.Code 4121-3-34(C)(7).

{¶ 23} 13. On March 18, 2016, the commission scheduled relator for a medical examination to be performed by Karen Gade-Pulido on April 5, 2016.

{¶ 24} 14. Relator failed to attend or submit to the scheduled medical examination.

{¶ 25} 15. On April 12, 2016, an SHO mailed an "Ex Parte Order" that suspends the PTD application. The order explains:

> Pursuant to R.C. 4123.53, it is ordered that the IC-2 Application for Compensation for Permanent Total Disability filed 01/16/2015 be suspended until such time as the Injured Worker appears for a medical examination by a physician of the Industrial Commission's choice. It is noted that the Injured Worker has previously been scheduled for a medical examination and failed to appear. It is the responsibility of the Injured Worker to notify the Industrial Commission when they [sic] are willing and available to attend a scheduled exam.

{¶ 26} 16. On June 14, 2016, relator, Mary Mignella, filed this action for a writ of procedendo.

Conclusions of Law:

{¶ 27} Because an original action is, at best, premature for relator to challenge the administrative proceedings of the commission, it is the magistrate's decision that this court deny relator's request for a writ of procedendo.

{¶ 28} In this action, relator challenges the February 25, 2016 "interlocutory order" of the SHO that refers the PTD applicant for a new examination because of questions raised during the deposition of Dr. Mease regarding the evidentiary value of her reports. The SHO's February 25, 2016 order suggests, but does not find, that the reports of Dr. Mease cannot provide some evidence on which the commission can rely in adjudicating the PTD application because American Medical Association guidelines were allegedly not followed.

{¶ 29} Citing regulations promulgated by the commission in the Ohio Administrative Code, relator asserts that the commission has no authority to order relator to submit to another medical examination, even if the report generated for the initial medical examination is found to be deficient.

{¶ 30} For example, citing Ohio Adm.Code 4121-3-34(A), relator argues:

> This regulation establishes specific procedures for processing application[s] for permanent and total disability benefits. Notably absent from the regulation is any provision that allows a staff hearing officer to require the injured worker to submit herself to an additional medical examination simply because the Industrial Commission specialist's report is not credible.

{¶ 31} R.C. 4123.53(A) currently provides:

> [T]he industrial commission may require any employee claiming the right to receive compensation to submit to a medical examination, * * * at any time, and from time to time, at a place reasonably convenient for the employee, and as provided by the rules of the commission or the administrator of workers' compensation.

{¶ 32} R.C. 4123.53(C) currently provides:

> If an employee refuses to submit to any medical examination * * * scheduled pursuant to this section or obstructs the same * * * the employee's right to have his or her claim for compensation considered, if the claim is pending before the bureau or commission, or to receive any payment for compensation theretofore granted, is suspended during the period of the refusal or obstruction. Notwithstanding this section, an employee's failure to submit to a medical examination * * * shall not result in the dismissal of the employee's claim.

{¶ 33} Supplementing the statute, Ohio Adm.Code 4121-3-12 provides:

> When the bureau or the commission orders an injured or disabled employee to submit to medical examination and such employee refuses to be examined or in any way obstructs the examination, the employee's claim for compensation shall be suspended during the period of his refusal or obstruction.

{¶ 34} Interpreting former R.C. 4123.53 (now R.C. 4123.53[A]), the Supreme Court of Ohio states in *State ex rel. Clark v. Indus. Comm.*, 78 Ohio St.3d 509 (1997):

> The commission's discretion under former R.C. 4123.53, however, is not unlimited. While former R.C. 4123.53 imposes no specific limit on the number of medical examinations that the commission may schedule, on any given issue, neither does it permit the commission to act in an unreasonable, arbitrary or unconscionable fashion in its determination to schedule them.
> * * *
>
> Accordingly, we hold that the commission abuses its discretion under former R.C. 4123.53 where the record fails to disclose that additional medical examinations are necessary or of assistance in determining PTD.

*Id.* at 512-13.

{¶ 35} Here, it can be observed that the SHO's order of February 25, 2016 that refers the PTD applicant for a new examination endeavors to explain why a new medical examination is sought by the commission. The SHO has articulated, at least facially, that an additional medical examination is necessary or of assistance in determining PTD. Thus, the SHO's order of February 25, 2016 appears to meet the *Clark* standard under R.C. 4123.53(A). It should be noted the *Clark* case involved court review of a final commission order, unlike the instant case.

{¶ 36} It is important to note that the SHO's order of February 25, 2016 and the SHO's "ex parte order" (mailed April 12, 2016) that suspends the PTD application are both interlocutory commission orders. That is, the commission has not yet issued a final administrative order that adjudicates the PTD application.

{¶ 37} Procedendo is a high prerogative writ of an extraordinary nature. *State ex rel. Ratliff v. Marshall,* 30 Ohio St.2d 101 (1972). A writ of procedendo is an order from a court of superior jurisdiction to one of inferior jurisdiction to proceed to judgment in a case before it. *Id.* The writ will not lie, however, to control or interfere with the inferior court's normal procedures or its determination as to what the judgment should be. *State ex rel. Utley v. Abruzzo,* 17 Ohio St.3d 203, 204 (1985).

{¶ 38} In order to be entitled to a writ of procedendo, the relator must establish a clear legal right to require the respondent to proceed, a clear legal duty on the part of respondent to proceed, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Weiss v. Hoover,* 84 Ohio St.3d 530, 531-32 (1999).

{¶ 39} Here, relator has an adequate administrative remedy.  She can submit to the additional medical examination and then argue the merits of her PTD application based on the evidence before the commission.  If relator should prevail before the commission, she will have obtained the relief that she seeks to obtain through this procedendo action. *See State ex rel. Daniels v. CHS Greystone, Inc.,* 10th Dist. No. 11AP-394, 2012-Ohio-2268 (Similar facts in a mandamus action.).

{¶ 40} Based on the above analysis, the magistrate concludes that this original action is, at best, premature because of the absence of a final administrative order.  *See State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88 (1998) (The ripeness doctrine is applied to a mandamus action brought by an employer challenging an award of temporary total disability.).

{¶ 41} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of procedendo.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).